FILED
01 JAN -4 PM 3: 25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ENTERED
JAN 0 4 2001

JEFFREY W. MURRAY,         )
                           )
        Plaintiff,         )
                           )
vs                         )    Case No. CV 99-TMP-1557-S
                           )
AVONDALE MILLS, INC.,      )
                           )
        Defendant.         )

## MEMORANDUM OPINION

This matter is before the court on the defendant's motion for summary judgment, filed August 15, 2000. On the same date, the defendant filed a memorandum of law in support of its motion. Essentially, the defendant seeks dismissal of all of the plaintiff's claims because the defendant contends that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law. On September 5, 2000, the plaintiff filed a memorandum of law in opposition to the defendant's motion. On September 12, 2000, the defendant filed a reply to the plaintiff's memorandum. The issues in this matter have been fully briefed, and the court has considered the evidence and the arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion.

## I. FACTS

The plaintiff, Jeffrey W. Murray, a black male, was employed by the defendant, Avondale Mills, Inc. ("Avondale"), a textiles manufacturer, from August 1995 until May 2000. Murray worked as a "map generator assistant" at Avondale's Eva Jane plant, and his job duties included providing the map generator the cloth by pushing and/or pulling a large buggy filled with cloth. The map generator would inspect the cloth, and Murray would then sweep the work area.

On or about January 24, 1997, Murray injured his right shoulder while pulling a heavy buggy. He reported the injury to his employer and several days later saw a doctor about the injury. About six months later, Murray saw another doctor for a second opinion. During the several months after the injury occurred, Murray continued to perform his normal job duties. In November of 1998, Murray underwent surgery on his shoulder. It is unclear when the doctor placed restrictions on Murray's work, but at some point he advised Murray not to lift above shoulder height. Upon receiving notice of the doctor's restrictions, Avondale no longer required Murray to move the buggy, but did require him to sweep the work area. Murray complained that the repetitive sweeping motion was beyond the doctor's restrictions, and he returned to the doctor. The doctor then recommended that the plaintiff take additional time off from work.

The doctor later recommended that Murray return to work, but that his duties be limited to office work. From December 1998 until March 1999, Murray was placed in an office and given some filing work. While restricted to office work, Murray complains that he was: (1) not permitted to speak to co-workers or to have co-workers talk to him during working hours, and (2) required to remain in the office where the temperature varied from very hot to very cold. The plaintiff reported to a supervisor that he believed the instructions and the office temperature constituted unfair treatment. After Murray complained about the temperature, Avondale had workers repair the heating system that served Murray's office.

When the doctor lifted the "office work" restriction in March of 1999 Murray returned to light duty. He operated a floor scrubber and did other cleaning work. Avondale approached Murray about other positions at the plant that were open and that would not require Murray to work beyond his limitations, including operating a lift truck, which plaintiff had done at a previous job. Murray declined each offer of an alternate position and never applied for any jobs that were posted in the plant. At all times Murray continued to receive the same salary he received before his injury.

Avondale routinely posted in the workplace job openings for positions within the plant. Murray vaguely remembers seeing announcements of available jobs, but he never applied for any of

3

them while he was on light duty. Murray admits that Avondale supervisors suggested that he seek positions that would not interfere with his work restrictions. Murray further admits that his supervisors offered him the chance to be promoted to map generator, and that he declined. He also admits that they discussed with him a job as a "ball doffer," but he declined. Evidence further indicates that he was approached about a job as a lift truck operator, but he did not pursue that opportunity. Instead, Murray continued to work light duty, being paid as if he were functioning as a map generator assistant.

The plaintiff filed a complaint commencing this action on June 16, 1999, about a year and a half after the injury. The complaint set forth a single claim of disparate treatment in which Murray alleged that the defendant discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981. In deposition, Murray complained that Avondale employees who were white received better treatment while on "light duty" than he received. Specifically, the plaintiff claims that Avondale treated Wade Abbott, Michelle Abrams, and Wanda Cleveland better when they were on "light duty" than it treated him.

In March of 2000, Murray received his first reprimands. On March 2, 2000, Murray and other employees were warned about taking a break on a fire escape, instead of in an authorized break area. The next day, on March 3, 2000, while recharging the floor scrubber

in a basement at Avondale, Murray sat down and read the newspaper during his 3:30 break time. After his break ended that day, Murray went into a bathroom at the plant and went to sleep for at least an hour. Supervisors looked for Murray on the afternoon of March 3, 2000, and were unable to locate him. As a result, Avondale suspended Murray from his job for approximately one week and considered putting in a request to terminate him based on their belief that he had "walked off the job."[1] Avondale ultimately declined to terminate Murray; however, Murray received reprimands for taking a break in an unauthorized area and for sleeping on the job.

The plaintiff amended his complaint on March 22, 2000, adding a claim of retaliation. Murray asserts that Avondale retaliated against him because he filed the instant race discrimination lawsuit against the company. The plaintiff contends that, after the lawsuit was filed, he began receiving reprimands from his employer and was suspended from his job for one week without compensation. Murray further contends that the reprimands were based upon actions that he did not commit. In the amended complaint, Murray asserts that Avondale retaliated against him by:

---

[1] In accordance with company policy, employees are not terminated until an investigation is completed and upper management has reviewed the situation.

5

(1) suspending him from work for a week, and (2) failing to notify him of at least one available job position.[2]

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of

---

[2] After receiving the reprimands in early March, Murray returned to work, and was warned that a third reprimand could result in termination. The plaintiff was given a final reprimand on April 11, 2000, when he was accused of being off the job without permission. A girlfriend of Murray's accused him of following her to her car in the Avondale parking lot, arguing with her and spitting in her face. At least one other employee said he saw Murray in the parking lot at the time of the alleged incident, which was during a time when Murray was supposed to be inside the plant working. Murray was suspended a second time pending an investigation, and was ultimately terminated. However, the amended complaint was filed before the termination, and the plaintiff has never moved to amend the complaint again; consequently, the plaintiff has stated no claim for retaliatory discharge, nor has he stated any claim based on the conduct of Avondale after March of 2000.

6

a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of

material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983) However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.

8

Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

The plaintiff claims that the defendant discriminated against him because of his race and in violation of 42 U.S.C. § 1981. The plaintiff does not offer any direct evidence of discriminatory conduct, but rather relies upon circumstantial evidence. The plaintiff also claims that the defendant took retaliatory action in response to his filing this lawsuit by issuing reprimands against him on March 6, 2000. The two claims will be examined in turn.

#### A. Race Discrimination

Murray's race discrimination claim is one of disparate treatment, alleging that he was treated less favorably than other employees because of his race. Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the

9

Supreme Court established the method by which a plaintiff may present a Title VII discrimination claim using circumstantial evidence. In order for Murray to establish a *prima facie* case of disparate treatment against Avondale, he must show that he was: (1) a member of a protected class; (2) subjected to an adverse job action; (3) treated differently than other similarly situated employees who were outside the class; and (4) qualified to do the job. Holifield v. Reno., 115 F.3d 1555, 1562 (11th Cir. 1997). In this case, the first and fourth elements are undisputed. Consequently, the inquiry of the court centers upon two primary issues: (1) whether Murray has established that he was subjected by Avondale to an adverse job action and (2) whether Murray was treated differently than other similarly situated non-minority employees.

### 1. Adverse Job Action

It is well settled that an adverse employment action is "an ultimate employment decision... or other conduct that 'alters the employee's compensation, term, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000), quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). To establish that he was subjected to an adverse job action, Murray

10

must show more than a "dislike[]" of or "disagree[ment]" with the employer's action or conduct. Malladi v. Brown, 987 F. Supp. 893, 915 (M.D. Ala. 1997), aff'd, 150 F.3d 1197 (11th Cir. 1998)(citing Perryman v. West, 949 F. Supp. 815, 819 (M.D. Ala. 1996). In addition, where the action complained of is not an "ultimate employment decision" such as demotion or discharge, the employee must prove that the action or conduct of the employer meets a threshold level of substantiality. See Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

While the law does not strictly limit claims of disparate treatment to cases involving a discharge, failure to hire, or other conduct that alters the employee's pay or benefits, the employer's conduct still must constitute a substantial employment decision.[3] In this case, the discriminatory conduct complained of consists of: (1) Avondale's placement of Murray in an office alone, where he was not allowed to speak with co-workers during working hours, and (2) the uncomfortable office temperature, which Avondale apparently corrected, or attempted to correct, after Murray complained.

---

[3] For example, in a recent case, the Fifth Circuit Court of Appeals held that a formal reprimand did constitute an adverse job action. See Harris v. Victoria Indep. School Dist., 168 F.3d 216, 220 (5th Cir. 1999), cert. denied, 120 S. Ct. 533, 145 L. Ed. 2d 413 (1999)(acknowledging that the Fifth Circuit repeatedly has held that reprimands constitute adverse employment decisions). Plaintiff does not claim, however, that the reprimands form the basis for his race claim; plaintiff's amended complaint references the reprimands only in regard to his retaliation claim.

11

Murray has not presented any authority that suggests such actions are "ultimate employment decisions" that "adversely affect the terms or conditions" of employment, nor is this court aware of any. Furthermore, Murray has failed to offer any support for a conclusion that Avondale's conduct meets the <u>Gupta</u> requirement of "substantiality."

Because this court finds that the plaintiff failed, in presenting his claim of disparate treatment, to reference any employment action by the defendant that constitutes an "adverse job action," the plaintiff's claim of disparate treatment should fail. Therefore, this court finds that the defendant's motion for summary judgment is due to be granted as to the plaintiff's race discrimination claim.

### 2. Similarly Situated Employees

Even if the plaintiff's complaints constituted actionable "adverse job actions," plaintiff's claim still would be due to be dismissed for the separate and independent reason that Murray has failed to identify any "similarly situated" non-black employees who were treated differently. In his deposition, Murray makes vague references to Wanda Cleveland, Wade Abbott and Michelle Abrams. However, Murray has failed to offer any evidence that any of the named workers was "similarly situated." Plaintiff has failed to identify: (1) the job each alleged comparator held, (2) the injury

12

each alleged comparator suffered, (3) the restrictions under which each alleged comparator was placed, and (4) the conduct Avondale engaged in with respect to each comparator that was different than the conduct Avondale engaged in with respect to Murray. Murray's vague assertions that Cleveland was placed at a desk and allowed to talk with co-workers or that Abbott was given an assistant to help perform his duties, are insufficient to create evidence of different treatment in the absence of some evidence as to what the employee's duties were before the injury, what the injury was, what restrictions were imposed, and what accommodations Avondale made. Because Murray also has failed to present evidence to show that there exists a genuine issue of material fact as to this element,[4] the defendant's motion for summary judgment is due to be granted.

### B. Retaliation

Plaintiff's retaliation claim is also governed by the framework established in <u>McDonnell Douglas,</u> 411 U.S. 792. In order for the plaintiff to successfully maintain a cause of action for retaliation against the defendant, the plaintiff must demonstrate that he: (1) engaged in a statutorily protected expression;

---

[4] The plaintiff has failed to allege that the reprimands given to him were race-based or that he was disciplined differently from white employees. Even if Murray were to make such a claim, however, it would be without merit because Murray has testified that he doesn't know why he received the reprimands and doesn't know if they are related to his race.

13

(2) suffered an adverse employment action; and that (3) "there is some causal relationship between the two events." Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). In this case, the first two elements are not disputed: Murray filed a lawsuit, which is a statutorily protected form of expression, and Avondale formally reprimanded Murray, which constitutes an adverse job action.[5] The dispute arises as to whether there exists a causal connection between the filing of the lawsuit and the disciplinary action.

The causal link requirement is to be construed broadly, and the Eleventh Circuit Court of Appeals has stated that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998), quoting EEOC v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). However, to meet even this low threshold of proof of causation, the plaintiff must offer some evidence from which a jury could infer

---

[5] The court reiterates that, although Murray was also reprimanded a third time and ultimately fired, those actions are not before the court because plaintiff failed to amend the complaint after the firing. The court notes, however, that even if the plaintiff had added this conduct, the outcome would not change because it is evident from the plaintiff's deposition that the third reprimand and the firing were based on the employer's good faith, even if erroneous, belief that Murray harassed a co-worker and left the work area without permission.

that Murray's filing of the lawsuit caused Avondale to reprimand him.

In seeking to establish a *prima facie* case of retaliation, Murray is not required to conclusively prove that the defendant's actions actually occurred in response to the filing of the lawsuit. See Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (quoting EEOC v. Reichold Chemicals, Inc., 988 F.2d 1565, 1571-72 (11th Cir. 1993). It is possible for the employee to create an inference of retaliatory motive where there is a short time span between the protected activity and the adverse action, and the employer was actually aware of the protected activity. Goldsmith, 996 F.2d at 1164-65 (plaintiff was fired within three weeks of the protected activity), citing Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987), cert. denied, 498 U.S. 939, 111 S. Ct. 345, 112 L. Ed. 2d 309 (1990)(adverse action taken the day after plaintiff complained); Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-01 (11th Cir. 1986)(plaintiff fired one month after filing complaint with EEOC). The filing of a lawsuit, followed closely by the receiving of reprimands when no other reprimands had previously been received, may permit a reasonable trier of fact to conclude that the two events are related. A lengthy gap between the events, however, does not raise such an inference. See, e.g., O'Connor v. Chicago Transit Auth., 985 F.2d 1362, 1370 (7th Cir. 1993)(eight-month period too long to give rise to inference of causation).

15

Murray filed a lawsuit against the defendant on June 16, 1999. The reprimands about which Murray complains did not occur until March 6, 2000, almost nine months later. In this case, more than eight months elapsed between the filing of the lawsuit and the first reprimand. Such an attenuated temporal relationship generally belies the assertion of causation. See, e.g., Maniccia v. Brown, 171 F.3d 1364, 1370 (11th Cir. 1999)(15-month gap too long) and cases cited therein. Consequently, the court finds that the timing is not sufficient to raise an inference of retaliation and thus does not support Murray's claim.

In the absence of an inference of retaliatory motive, a plaintiff still may prevail by demonstrating other evidence that the employer acted in retaliation. Under Title VII, an employee need not prove the underlying claim of discrimination in order to establish his retaliation claim. See Taylor v. Runyon, 175 F.3d 861, 869 (11th Cir. 1999). A *prima facie* case of retaliation can be established based upon an employee's reasonable belief that the employer's motives were retaliatory. See Malladi, 987 F. Supp. at 914.

In this case, Murray has failed to demonstrate that he had a reasonable belief that the defendant's actions were motivated by a desire to retaliate. Murray admits that the reprimand was received in response to his leaving his work station and taking a nap in the bathroom for "about an hour." Furthermore, Murray admits that he

16

did no work, and was not at his work area, from the time his break began at 3:30 p.m. on March 3, 2000, until his shift ended at 5:30 p.m. Finally, Murray admits that he took his break in the basement where the floor scrubber was recharging, even though he had been admonished to take breaks only in authorized areas. Murray even admits that he knows of no worker who engaged in such conduct without being reprimanded and that he knew such conduct would render him subject to disciplinary action.

In deposition, when Murray was asked if he thought that the reprimands were given because he had filed a complaint against Avondale, Murray said he didn't know the reason.[6] Accordingly, Murray cannot now claim that he had a reasonable belief that the reprimands were issued in retaliation for the filing of the lawsuit.

The facts make it clear that Avondale had specific, justifiable reasons for reprimanding Murray.[7] The reprimands were

---

[6] Murray also said he didn't know whether the reprimands were given on account of his race.

[7] Once the plaintiff in a Title VII case establishes the *prima facie* case, the employer must then proffer a legitimate, non-discriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove that the reason the employer gave for the adverse action is merely a pretext for prohibited, retaliatory conduct. Meeks, 15 F.3d at 1021. In this case, plaintiff has failed to establish a *prima facie* case of retaliation; but, even if plaintiff had proven the requisite elements, plaintiff's claim still would be due to be dismissed because Avondale has proferred the legitimate, non-discriminatory reason for the reprimand - plaintiff did sleep on the job and on

17

separated in time from the filing of the lawsuit by almost nine months. Murray's own admissions fail to lend any support to his claim of retaliation. Accordingly, the defendant's motion for summary judgment as to the plaintiff's retaliation claim is due to be granted because there is no evidence that demonstrates a causal link between the filing of the lawsuit and the reprimands.

## IV. CONCLUSION

Based on the foregoing facts and legal conclusions, this court determines that the motion for summary judgment filed by the defendant is due to be GRANTED as set forth herein. A separate order will be entered in accordance with the findings set forth herein.

DATED this 4th day of January, 2001.

_____
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

---

break in the basement - and plaintiff has not shown the reason to be pretextual.